UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NUMBER:

MOLLY ELVIG, on behalf of herself and all others similarly situated,

Plaintiffs,

vs.

NINTENDO OF AMERICA, INC.

Defendants.

_____

**ORIGINAL CLASS ACTION COMPLAINT**
_____

Plaintiffs, MOLLY ELVIG, by and through her attorneys, Klein│Frank, P.C. and Sutton Kleinman PLLC, hereby file this Complaint and Jury Demand against the Defendants as follows:

**INTRODUCTION**

1. This is a class action brought by Molly Elvig on behalf of a class (the "Class") of all U.S. residents who lawfully acquired a Nintendo Wii video game controller ("Remote") possessing a wrist strap, and marketed by Defendant Nintendo of America, Inc., or its licensees, subsidiaries or affiliates (Hereinafter "Defendant" or "Nintendo").

2. Plaintiff brings this action for damages and equitable and injunctive relief as a result of the Defendant's violation of the Colorado Consumer Protection Act, UCC – Sales (Breach of Warranty) and Product Liability Actions, through its conduct in the sales, marketing, design and distribution of the Nintendo Wii.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. § 1332(d).

4. The matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs.

5. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(a).

**PARTIES**

6. Plaintiff Molly Elvig is a resident of the City of Littleton, County of Arapahoe, State of Colorado. Plaintiff's minor son purchased a Nintendo Wii directly from a retailer on or about December 3, 2006.

7. Defendant is a foreign corporation registered with the Colorado Secretary of State, and with its principal address at 4820 150th Avenue NE, Redmond, Washington 98052. Defendant has identified its Registered Agent in Colorado as The Corporation Company, 1675 Broadway, Suite #1200, Denver, CO 80202.

**FACTS**

8. Defendant Nintendo is a seller of video game hardware and software, including the Nintendo Wii.

9. On or about November 2006 Defendant made available its Nintendo Wii video game product for sale in the United States.

10. The Wii video game differs from prior video game systems by the manner in which the user interacts with the Wii Remote. For example, one may use the Wii Remote to play a Bowling game in which the user will make a bowling motion while holding the Wii Remote in order to play the game and roll the bowling ball. Similarly, the user will make a swinging motion while holding the Wii Remote to simulate swinging a tennis racket in the Tennis game. Each Wii

Remote is equipped with a wrist strap so that the Wii Remote does not separate or escape from the gamer during play.

11. On or about November 13, 2006, six days prior to the Wii video game's official launch, Defendant or its agents furnished the prominent video gaming network IGN.com with a Wii video game for purposes of generating press and publicity and spurring sales.

12. On or about November 13, 2006 while playing the promotional Wii video game with staffers, IGN.com's Editor-in-Chief, Matt Casamassina, personally witnessed and observed the following while the Wii video game was being used in its intended and advertised manner: "so one of the girls in particular really was having a good time, and really got into this game, and she was going for the full arcing motions ***like you see in those commercials***..." and "…before you knew it *this Remote,* ***with strap on, and I made sure that bad boy was strapped to her wrist, because Nintendo's warned me so many times****. It actually flew out of her hand anyway, broke, out of her hand, the strap actually ripped, it went like this, flying at mach speed I think, BAM!, hit our wall, put an indent in our wall.*" [emphasis and bold added] A copy of the full IGN.com transcript, which is also available for viewing in video format on IGN's website, is attached hereto as Exhibit 1[1].

13. On or about November 19, 2006 Defendant made its Wii video game available for purchase to Members of the public in the United States.

14. On or about the November 2006 Defendant or its agents initiated a Wii product launch that included television commercials ("TV Commercials") broadcast throughout the United States.

---

[1] The video may be seen at: http://media.wii.ign.com/articles/745/745202/vid_1742357.html

15. The TV Commercials show repeated examples of individuals playing the Wii video game in an athletic and vigorous manner, as expressly referred to by IGN's Mr. Casamassina above. See still images of these commercials attached hereto as <u>Exhibit 2</u>. The *You & Wii™* game guide published by Defendant and/or its agents or licensees, <u>Exhibit 3</u> attached hereto, contains Wii gaming user instructions and tips. These include:

- *The key is to pump the Wii Remote and Nunchuck back and forth in your two hands **as rapidly as possible** without abating.* [emphasis added] (Boxing, Pg. 49)
- ***Swing hard** to make sure you clear the net!* [emphasis added] (Tennis, Pg. 63)

16. Each Wii Remote possesses a wrist strap. The wrist strap is designed for the user to wear when operating the Wii Remote.

17. Within days of the Wii video game's November 19, 2006 product launch, Defendant received numerous complaints from customers that the Wii Remote wrist strap would break during play, and that as a result of the wrist strap breaking, the Wii Remote separated from the gamer, and the Wii Remote forcefully flew into customers' televisions and shattered the TV screens. Defendant also received reports of personal injury and and/or other types of property damage arising from the Wii remote strap breaking and caused by rapidly flying Wii Remotes.

18. The Wii Remote wrist straps breaking in the hands of large numbers of consumers subsequent to the November 19, 2006 product launch, broke in an identical fashion to the IGN game Remote wrist strap prior on or about November 13, 2006 or prior to the Wii's official launch. Hence Defendant actually knew of the wrist strap's propensity to break. See <u>Exhibit 1</u>, *"and I made sure that bad boy was strapped to her wrist, <u>because Nintendo's warned me so many times</u>."*

19. Plaintiff's minor son, then 11 years old, purchased a new Wii video game from a Littleton, Colorado area retailer on or about December 3, 2006.

20. On or about December 3, 2006 Plaintiff's minor son was playing Wii video game Bowling in a reasonable manner and with the Wii Remote's wrist strap in place on his wrist in the correct manner. In the course of the Bowling game, the Wii Remote wrist strap snapped, and the Wii Remote flew into Plaintiff's 52" flat screen Samsung TV, thereby breaking the TV screen. See Exhibit 4, attached hereto.

21. The wrist strap on the Wii Remote is ineffective for its intended use and is prone to break while the user of the Wii Remote is using the Wii Remote in its intended manner.

22. The defective nature of the Wii Remote wrist strap was never disclosed by Nintendo to purchasers.

23. Due to the large number of Wii Remote straps breaking in the hands of consumers, and thereby causing property damage and/or personal injury, Defendant or its representatives worked in conjunction with the United States Consumer Product Safety Commission (CPSC) to address the issue of breaking straps.

24. On or about December 15, 2006 the CPSC issued a press release ("CPSC Press Release") drafted in conjunction with Nintendo or its representatives, a copy of which is annexed hereto as Exhibit 5. The CPSC Press Release states that consumers using "excessive" force in connection with their Wii Remotes could "potentially" cause wrist strap failure and that as a result, the Remote might strike bystanders or objects. The CPSC Press Release also announced a "voluntary replacement" program for "wrist straps [that] are sold with Nintendo's Wii video game system."

25. The wrist strap that was the subject of the CPSC Press Release was the wrist strap launched on or about November 19, 2006 possessing a filament diameter of .6 mm ("Strap I"). The CPSC Press Release also announced the introduction of a wrist strap possessing a filament diameter of 1.0 mm ("Strap II") that was intended to remedy the performance shortcomings of Strap I.

26. Shortly after the launch of Strap II, consumers contacted Defendant in numbers and informed Defendant that Strap II was failing in an identical fashion to Strap 1, and also causing property damage and/or personal injury. Additionally, Strap II was failing in a new way in that Strap II's wrist strap would loosen and fail to secure the game Remote to gamers' hands. Hence the Remotes flying into television screens and causing property damage and/or personal injury continued. Strap II was so unsatisfactory that it broke and snapped while being used by three year old child, resulting in a shattered flat screen TV, and property damage and/or personal injury continued unabated. See Exhibit 6, attached hereto.

27. On or about August 9, 2007 Defendant issued a replacement for Strap II, Strap III. Strap III possesses a filament diameter of 1.0 mm, but also possesses a purportedly locking mechanism on the wrist strap 1.0 mm filament, presumably to address the safety and performance shortcomings of Straps I & II.

28. Shortly after the launch of Strap III, consumers contacted Defendant in numbers and informed Defendant that Strap III was failing in an identical fashion to Strap I and Strap II.

29. Straps I, II & III are each unfit for their intended purpose, and Defendant possessed and possesses actual knowledge of this fact. Given the purpose of the wrist strap, such performance is a safety failure. The original strap, its replacement, and the replacement's

replacement[2] continue to fail in numbers thereby causing property damage and or personal injury.

30. Defendant has received not less than 500 reports of Wii Remote straps failing to accomplish their intended purpose and the result being property damage[3] and/or personal injury. Actual sample reports made directly to Nintendo, and that are now public documents, are attached as Exhibit 6.

31. Straps I, II and III do not require "excessive" force to snap or otherwise fail.

32. As part of its dealings with the CPSC, Defendant was required to supply the CPSC with Monthly Progress Report[s] For Corrective Action Plan "Monthly Reports to the CPSC" thereby keeping the CPSC apprised of the number of Wii strap "Incidents." More specifically, the CPSC's Office of Complinance mandated on December 27, 2006 that if Defendant "learns of any information concerning other incidents or injuries, or information affecting the scope, prevalence or seriousness of the reported problem, it must that information to this Office immediately." See Exhibit 7, attached hereto.

33. Despite actual knowledge of hundreds of incidents involving broken televisions over time and subsequent to December 27, 2006, Defendant failed to report the existence of even a single "Incident" to the CPSC in its Monthly Reports to the CPSC. Defendant systematically and intentionally was untruthful in its representations to the CPSC, see Exhibit 8 attached hereto.

**CLASS ACTION ALLEGATIONS**

34. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiffs brings this action on behalf of themselves and a Class of similarly situated persons defined as:

---

[2] A third party manufacturer, LeashTec, successfully markets the GameLeash to Wii customers, a more robust neoprene straps that works for its intended purpose.

[3] The overwhelming type of property damage experienced by Wii gamers is shattered flat screen TVs.

35. All US residents who lawfully acquired a Wii game video game Remote possessing a wrist strap manufactured and/or marketed by Defendant.

36. Members of the Class are so numerous that their individual joinder is impracticable.

37. Plaintiff believes there are thousands of individuals whose claims are similar to Plaintiff's claims, and, furthermore, that Plaintiff's claims are typical of the claims of absent Class Members. Members of the Class have sustained damages arising out of Defendant's wrongful conduct in the same manner that Plaintiff has sustained damages from Defendant's unlawful conduct.

38. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent litigation counsel with prior class-action experience. Plaintiff has no interests that are antagonistic to, or in conflict with, the Members of the Class. Indeed, Plaintiff's interests are, for purposes of this litigation, coincident with the interests of the other Class Members.

39. Common questions of fact and law exist to all Members of the Class. These common legal and factual questions include:

    a. Whether Nintendo made false and/or misleading and/or deceptive statements of fact to the Plaintiff, the Class and the CPSC, concerning the safety history, performance and proper use of the Wii Console and Wii Remote.

    b. Whether Nintendo has breached its implied warranties for the Wii video game to Plaintiff and Members of the Class.

    c. Whether Nintendo's false and/or misleading statements of fact and its concealment of material facts regarding the performance and reliability of the Wii were likely to deceive the public.

d. Whether, by the misconduct set forth in this Complaint, Nintendo has engaged in unfair or deceptive practices with respect to the advertising, marketing, and sale of the Wii.

e. Whether Nintendo has engaged in violations of the jurisdiction's Product Liability Statutes.

f. Whether Nintendo's voluntary exchange program has fairly and adequately addressed the lawful grievances of the Plaintiff and Members of the Class.

g. Whether, as a result of Nintendo's misconduct, Plaintiff and the Class are entitled to damages and equitable relief, and, if so, the nature of such relief.

40. This suit may also be maintained as a class action because Plaintiff and the Class seek declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(1) as each Plaintiffs' individual claim would be relatively small, and therefore the prosecution of separate actions by would-be Plaintiffs would create the risk of inconsistent or varying adjudications which would, as a practical matter, be dispositive of the rights of other Class Members not parties to the adjudication.

41. This suit may also be maintained as a class action because Plaintiff and the Class expressly seek declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) as Defendant acted on grounds generally applicable to Plaintiff and the Class, thereby making declaratory and/or injunctive relief proper.

42. This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class Member may be relatively small, especially given the burden and expense of individual prosecution of the

complex and extensive litigation necessitated by Defendant's conduct. Furthermore, it would be virtually impossible for the Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Moreover, even if Class Members themselves could afford such individual litigation, the court system could not. Individual litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single Court.

43. Plaintiff has alleged the foregoing based upon the investigation of her counsel, and believes that that substantial evidentiary support will exist for the allegations set forth in paragraphs "1" though "33" inclusive after a reasonable opportunity to conduct discovery.

**FIRST CAUSE OF ACTION**
**(Violation of the Colorado Consumer Protection Act)**

44. Plaintiff realleges and incorporates the preceding paragraphs.

45. The Colorado Revised Statutes, Title 6, Article 1 et seq. protect persons who obtain goods or services primarily for personal, family or household purposes from fraudulent and unfair business practices.

46. The Defendant's Wii Remotes are obtained by customers primarily for personal, family or household purposes.

47. Plaintiff and Members of the Class are consumers within the meaning of the CPA.

48. Defendant is a seller with the meaning of the CPA.

49. Defendant violated the Colorado Consumer Protection Act in the following respects: failing to disclose material information concerning goods, which information was

known at the time of an advertisement or sale, and such failure to disclose information was intended to induce the consumer to enter the transaction; and, knowingly making false representations as to the characteristics, uses and benefits of goods; and, representing that goods are guaranteed without clearly and conspicuously disclosing the nature and extent of the guarantee, and representing that goods so guaranteed have a greater degree of durability or performance capability in actual use than is true in fact; and, false or deceptive advertising in connection with a consumer product; and, Defendant's published untruths to the CPSC in its Monthly Reports to the CPSC which left the CPSC in a position whereby it did not issue a product recall or otherwise adequately warn Plaintiff or require corrective measures, and therefore would constitute an unfair and deceptive trade practice on the part of a seller.

50. The representations by the Defendant were false, misleading and deceptive in that the Wii Remote wrist strap would fail when used as represented by Defendant, and that as result of the Wii Remote wrist strap's failure, Plaintiff and Members of the Class have experienced property damage and/or personal injury.

51. Defendant engaged in an unconscionable course of action in that the Defendant was knowingly and intentionally untruthful to the CPSC regarding the number of incidents involving the Wii Remote wrist strap, and that Plaintiff and Members of the Class have experienced property damage and/or personal injury as a result, in that the CPSC was lacking the essential knowledge to truly grasp the performance failures of this product and act accordingly.

52. Defendant engaged in an unconscionable course of action in that it either knew, or should have known, that a large number of Wii gamers are minors, and Defendant allowed and allows these minors to continue to use the Wii video game that will result in serious property damage.

53.  The unlawful trade practices alleged in the preceding paragraphs caused an ascertainable loss of money or damage to property of Plaintiff and the Class.

54.  Plaintiff may recover for its losses and attorney's fees pursuant to the Colorado Consumer Protection Act.

## SECOND CAUSE OF ACTION
### (Uniform Commercial Code – Sales)

55.  Plaintiff re-alleges and incorporates the preceding paragraphs.

56.  The Colorado Revised Statutes, Title 4, Article 2, et seq., UCC – Sales, sets forth legal mandates for the warranty of goods in his jurisdiction. These mandates include 4-2-315, an implied warranty of fitness for a particular purpose.

57.  Defendant impliedly warranted to the Plaintiff and Members of the Class that the Wii video game was of merchantable quality and was safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner.

58.  Defendant's goods were not merchantable as warranted in that the Wii Remote, an object intended to be swung at considerable speed, does not stay secure to Plaintiff and Members of the Class as it is supposed to, and that as a result, the Wii Remote becomes a rapidly moving unintentionally thrown object causing foreseeable property damage and/or property damage.

59.  Defendant knew or had reason to know of the purpose which the Plaintiff and Members of the Class purchased the goods for, and that Plaintiff and Members of the Class were relying on the Defendant's skill and judgment to select and furnish suitable goods, and the goods in question were unfit for the purpose for which they were intended to be used in that the Wii Remote would not remain secured to gamers.

60. Defendant made affirmative representations that formed the basis of the bargain and relating to the goods. It further advertised samples of the goods, yet the goods delivered to consumers did not so conform as to the advertised samples in that the advertised samples did not break or otherwise fail when used as advertised.

61. Defendant had reason to know at the time of sale the particular purpose the goods were intended for, and the Plaintiff and Members of the Class relied on the Defendant's skill or judgment to furnish suitable goods, and Defendant failed to furnish suitable goods.

62. By representing that the Wii Remote wrist strap does not break in everyday ordinary use, and failing to furnish goods suitable for the purposed Defendant was aware that the goods were required for, Defendant has breached the implied warranty of merchantability provision or the Colorado Revised Statutes.

### THIRD CAUSE OF ACTION
(Strict Liability)

63. Plaintiff re-alleges and incorporates the preceding paragraphs.

64. Defendant failed to warn or protect against a danger or hazard in the use of the Wii Remote.

65. The Defendant failed to provide proper instructions for the use of the Wii Remote.

66. Defendant is a manufacturer and/or seller within the meaning and definition of 13-21-4 and common law.

67. On or about December 2, 2006 Plaintiff purchased the Wii video game from a Littleton, Colorado retailer.

68. The Wii video game was in the same condition at the time Plaintiff and Members of the Class experienced damages as it was when it was originally manufactured and the time it was sold by the retailer to Plaintiff and Members of the Class.

69. Plaintiff and Members of the Class experienced damages when using the Wii video game in the intended manner and as foreseen by the Defendant.

70. The Wii video game was defective and unsafe for its intended purpose at the time it left the control of the retailer. The product was defective in that the Wii Remote wrist strap would break or fail, causing the Wii Remote to fly through the air, out of control, at considerable speed. In turn, the flying Wii Remote would strike TV screens it was directed at and break the TV screens. Additionally, broken lamps, windows, ceiling fans, sliding glass doors and other items, and/or personal injury have been experienced by Plaintiff and hundreds of Members of the Class and caused by Wii Remote wrist strap failure.

71. The Wii video game is sold to consumers with inadequate warnings and instructions with respect to the dangers created by the Wii Remote wrist straps. The actual result is that Plaintiff and Members of the Class have experienced damages thereby. Defendant has failed to reasonably apprise Plaintiff and Members of the Class of the harm that flows from the Wii video game product when used in its intended, ordinary manner.

72. The construction and/or design and/or testing and/or labeling of the Wii Remote strap resulted in property damage and/or personal injury to Plaintiff and Members of the Class.

73. The Wii video game was defectively designed so as to render it unreasonably dangerous to Plaintiff and Members of the Class. In particular, the Wii Remote wrist straps, including Strap I and/or Strap II, and/or Strap III, possess a string filament that is unable to bear the force gamers put on the strap when using the Wii video game in its intended manner. This

defect is why children and young as three and four years old are strong enough to have undergone Wii strap failure resulting in shattered flat screen TVs.

74. Defendant's failure to warn and to provide proper instructions for the use of any product has resulted in actual damages to property and/or personal injury to Plaintiff and Members of the Class.

**FOURTH CAUSE OF ACTION**
(Negligence)

75. Plaintiff re-alleges and incorporates the preceding paragraphs.

76. Defendant is a manufacturer and/or seller of the Wii Remote.

77. The Defendant negligently manufactured, constructed, designed, prepared, assembled, tested, packaged, and/or labeled the Wii Remote.

78. The Defendant's negligence caused damages and losses to Plaintiff and Members of the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, on her own behalf and on behalf of the Class, Plaintiff demands judgment as follows:

    a. An Order determining that this action is a proper class action maintainable under Federal Rule of Civil Procedure 23;

    b. An injunction requiring Defendant to correct the defect with the Wii Remote on behalf of the Class by refunding or replacing the product with a product that functions as warranted, represented, and intended;

    c. An injunction requiring Defendant to set up a systematic claims process whereby users of Remotes with faulty wrist straps that proximately cause damage to property

(i.e., flat screen TVs) and/or injuries to persons will be fairly and adequately compensated for their damages incurred.

Additionally, plaintiffs ask for costs of this action, all pre-judgment and post-judgment interest as provided by law, trebling of damages, expert witness's and attorneys' fees where appropriate, and for all such other relief as the Court deems appropriate.

**PLAINTIFF REQUESTS A JURY TO HEAR ALL ISSUES IN THIS CASE.**

Dated: December 2, 2008.

Respectfully submitted,

BY: s/Robert Kleinman_____
Robert B. Kleinman
Admitted to the District Court
Texas Bar No. 24055786
SUTTON KLEINMAN PLLC
710 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (512) 276-5040
Facsimile: (512) 355-4155
rkleinman@suttonkleinman.com

and

BY: s/Beth Klein_____
Beth Klein #17477
Klein│Frank, P.C.
Attorneys for Plaintiffs
1909 26th Street, Suite One C
Boulder, Colorado 80302-5701
Phone Number: 303-448-8884
Fax Number: 303-861-2449
beth@klein-law-firm.com

Plaintiff's Address:
7972 S. Elati Circle
Littleton, CO 80120