IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02616-MSK-MEH

MOLLY ELVIG,
MICHAEL HAMILTON,
BRIAN KATZ, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

NINTENDO OF AMERICA, INC.,

      Defendant.

---

## ORDER ON MOTION FOR PROTECTIVE ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is Defendant's Motion for Protective Order [filed July 1, 2009; docket #49].  The motion is briefed and has been referred to this Court.  Oral argument would not materially assist the Court in adjudicating the motion.  For the reasons stated below, the Court **grants in part and denies in part** Defendant's motion.

## I.    Background

      Plaintiffs, on behalf of themselves and others similarly situated, allege that they have suffered damages resulting from an alleged defective wrist strap attached to a remote that functions with the Wii game system sold by Defendant Nintendo of America (NOA).  Plaintiffs bring claims for violations of the Washington Consumer Protection Act, for Strict Products Liability and Negligence.

      In the current dispute, Plaintiffs seek to depose Defendant's chief executive officer (for whom Defendant seeks a protective order) to obtain information regarding "why [Nintendo] marketed a safety wrist strap that fails" and "why NOA has since twice replaced the strap with

subsequent versions that also fail." Plaintiffs contend that a Rule 30(b)(6) deponent has identified the CEO, Tatsumi Kimishima, as the "one individual within NOA possessing unique personal knowledge as to these issues and answers Plaintiffs seek."

Defendant argues that Mr. Kimishima is a high level executive who should be protected from a deposition at this point in the litigation for several reasons. First, Defendant claims that Mr. Kimishima was not involved in decisions regarding the wrist strap and its replacement program, and that his knowledge of the program is limited to information received from other employees; therefore, he claims he has no unique personal knowledge of the information Plaintiffs seek. In addition, Defendant claims that a deposition is unnecessary since the Plaintiffs may obtain the information she seeks from other witnesses. Finally, Defendant claims that Plaintiffs should seek the information through other methods of discovery that will not be as intrusive into Mr. Kimishima's busy schedule.

## II.    Legal Standard

The scope of evidence subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1) (2009). The burden normally is on the party seeking protection from discovery to establish good cause. Fed. R. Civ. P. 26(c)(1) (2009); *see also Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (the party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1)).

However, where a party seeks to depose a high level executive typically removed from the

2

daily subjects of the matter in litigation, the party seeking discovery must first demonstrate that the proposed deponent has "unique personal knowledge" of the matters in issue. *EchoStar Satellite, LLC v. Splash Media Partners LLC*, 2009 WL 1328226, *2 (D. Colo. May 11, 2009) (unpublished) (citing *Baine v. General Motors Corp.,* 141 F.R.D. 332, 334 (M.D. Ala. 1991)); *see also Six West Retail Acquisition, Inc. v. Sony Theater Mgmt. Corp.,* 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (stating that "[u]nless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a redundant deposition of [the] highly-placed executive while allowing other witnesses with the same knowledge to be questioned" (internal quotations and citations omitted)).  The court in *Baine* found that "the unique personal knowledge must be truly unique-the deposition would not be allowed where the information could be had through interrogatories, deposition of a designated spokesperson, or deposition testimony of other persons." *Baine,* 141 F.R.D. at 334 (internal citations omitted).

Under the "apex doctrine," a court may protect a high-level executive officer from the burdens of a deposition upon a showing that (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought can be obtained from another witness; (3) the information can be obtained through an alternative discovery method; or (4) severe hardship on the deponent. *Echostar Satellite*, 2009 WL 1328226 at *2.  The apex doctrine recognizes that high ranking and important executives "can be easily subjected to unwarranted harassment and abuse" and "have a right to be protected, and the courts have a duty to recognize [their] vulnerability." *Id.* (citing *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985)); *see also Six West Retail,* 203 F.R.D. at 102 (noting that the "likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives").

### III.    Analysis

Here, the Court finds that Tatsumi Kimishima is a "high-level executive officer" of the Defendant NOA who may be protected under the apex doctrine.  Therefore, the Court will proceed to determine whether the doctrine applies to prevent Mr. Kimishima's deposition.

The Plaintiffs contend that they seek information regarding the relationship and communications between NOA and its parent company, Nintendo Co., Ltd. (NCL), with respect to the Wii Remote wrist strap problems, including resolution of claims for damages resulting from the strap.  *See* docket #51 at 5.  In a previous Rule 30(b)(6) deposition, NOA Executive Vice President, Donald James, identified Mr. Kimishima as both the Chief Executive Officer of NOA and a director of NCL.  Docket #49-7 at 3-4.  Mr. James testified that Mr. Kimishima has knowledge of the launch of the Wii, that he did not know whether Mr. Kimishima communicated or interfaced with the parent company regarding the Wii launch, and that Mr. Kimishima was informed of the changes made to the wrist strap.  *Id.*  In a response to a discovery request made by the Plaintiffs, NOA responded that "neither NOA nor its employees were responsible for making the decisions to replace Strap I or Strap II. NOA understands that those decisions were made by its parent company."  Docket #51 at 3.  Through his affidavit, Mr. Kimishima declares that "I was not involved in making any decisions with regard to [the Wrist Strap Replacement Program]" and "[m]y knowledge of the Wii Remote wrist strap and the Replacement Program is limited to information that I received from other employees" [docket #49-9 at ¶ 5]; however, he identifies no individuals or employees who may have such knowledge.

Nothing in the record reflects whether Mr. Kimishima was involved in communications between the companies regarding consumer complaints about the wrist strap or the replacement

program.[1]  Therefore, based on the information provided by the parties, the Court finds that Mr. Kimishima, as CEO of NOA and a director of NCL, may have unique personal knowledge of certain discoverable information the Plaintiffs seek: the relationship and communications, if any, between NOA and NCL regarding decisions made about consumer complaints and/or the Wii Remote wrist strap replacement program.[2]

While Defendant argues that such information may be obtained from other witnesses, it identifies none.  The Court cannot see how information regarding Mr. Kimishima's knowledge of these subjects can be obtained through a 30(b)(6) deposition.  At the same time, however, the Court sees how such information may be ascertained through an alternative discovery method.  From the briefing provided, it appears that Plaintiffs have not sought the information through Rule 33 interrogatories or a Rule 31 deposition by written questions.  Plaintiffs make no argument as to why such alternative methods are unacceptable.

Therefore, the Court will grant the motion for protective order to prevent Mr. Kimishima's deposition from going forward at this time, but will allow the Plaintiffs to seek the discoverable information through interrogatories or a Rule 31 deposition.[3]  The Court denies the motion to the extent that Defendant seeks to prevent the Plaintiffs from directing any discovery requests at Mr. Kimishima.

---

[1]Mr. Kimishima attests that he has "not communicated regarding the wrist strap with any of the companies that manufacture it."  Docket #49-9 at ¶ 4.  The Court infers from this statement that Mr. Kimishima has not communicated with NCL or other companies regarding the manufacture of the wrist strap.

[2]In addition, the Court has considered Defendant's argument that Plaintiffs may not seek information from a non-party through discovery methods utilized in this litigation.  However, the Court interprets Plaintiffs' discovery request as being directed only to Mr. Kimishima seeking his knowledge, if any, of the information requested.

[3]In anticipation of issues regarding the limits on written discovery, the Court believes that the limit on interrogatories should be increased to 30 per side.

**IV.    Conclusion**

Accordingly, Defendant's Motion for Protective Order [filed July 1, 2009; docket #49] is

**GRANTED IN PART AND DENIED IN PART**, as set forth herein.

Dated at Denver, Colorado, this 31st day of July, 2009.

BY THE COURT:

*Michael E. Hegarty*

_____
Michael E. Hegarty
United States Magistrate Judge