IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02616-MSK-MEH

MOLLY ELVIG,
MICHAEL HAMILTON, and
BRIAN KATZ, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

NINTENDO OF AMERICA, INC.,

    Defendant.

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND
DENYING MOTION FOR CLASS CERTIFICATION**

---

**THIS MATTER** comes before the Court pursuant to Nintendo of America, Inc.'s ("Nintendo") Motion to Dismiss **(# 41)**, the Plaintiffs' response **(# 43)**, and Nintendo's reply **(#44)**; and the Plaintiffs' Motion to Certify Class **(# 60)**, Nintendo's response **(# 70)**, and the Plaintiffs' reply (# 77).

## FACTS

According to the Amended Complaint **(# 39)**, the Plaintiffs are each owners of Nintendo's "Wii" video game system. The Wii system connects to a player's television set and allows the player to play a variety of games, such simulated games of tennis and boxing. In order to control the action on-screen, players face the television and gesture, holding a motion-sensitive controller in their hand, to simulate performing particular physical actions (*e.g.* a tennis serve, a boxing punch). Some players, gesturing exuberantly, have had the controller slip out of

1

their hand and crash into the television set, causing damage. Although Nintendo included a safety strap that connected the controller to a band around the player's wrist by means of a thread, the Plaintiffs contend that the strap was insufficiently designed to prevent a dropped controller from causing damage to users' televisions. Since the system's introduction, Nintendo has received numerous reports of instances in which the strap failed to prevent damage from wayward controllers. Nintendo has twice modified the strap in an attempt to correct those failures, but has been unsuccessful. The Plaintiffs contend that Nintendo has failed to report instances of broken straps to the Consumer Product Safety Commission ("CPSC") as directed.

The Plaintiffs assert three claims: (i) violation of the Washington Consumer Protection Act, RCW § 19.86, in that Nintendo has engaged in "deceptive practices" by falsely representing that "the Wii Remote may safely and properly be used in an athletic, energetic, and enthusiastic manner" as seen in Nintendo's advertisements and product literature and by misleading the CPSC as to the extent of the problem, thereby forestalling remedial action by the CPSC; (ii) strict products liability under the law of the State of Washington, RCW § 7.72, in that the safety strap "was not reasonably safe as designed" or because "adequate warnings or instructions were not provided"; and (iii) common-law negligence, under an unspecified jurisdiction's law, in that Nintendo "negligently manufactured [and] designed, [etc.]" the controller. The Plaintiffs seek monetary and injunctive relief, and further seek to prosecute this action on behalf of a class of "All U.S. residents who lawfully acquired a Wii [controller] possessing a wrist strap manufactured and/or marketed" by Nintendo.

Nintendo moves to dismiss **(# 41)** the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Specifically, Nintendo argues: (i) the claims asserted under Washington

statutory law fail because Colorado choice of law provisions dictate that this Court apply the law of the place in which the accident occurred (here, Colorado, California, and Florida), rather than the law of the Washington which is simply where Nintendo's corporate offices are found; (ii) even if Washington's product liability laws apply, the Plaintiffs have inadequately pled a claim for breach of express warranty, in that they fail to plead facts indicating what warranties Nintendo made about the safety straps or how such warranties were breached, and have failed to plead any facts indicating the existence or nature of any alleged implied warranty; (iii) the claim under Washington's Consumer Protection Act sounds in fraud, and thus, must be pleaded with particularity under Fed. R. Civ. P.9(b), (iv) the Plaintiffs have failed to adequately plead any deceptive practice by Nintendo sufficient to support the Consumer Protection Act claim; (iv) the Plaintiffs' request for an injunction directing Nintendo to establish a claims process for damage caused by failing straps fails to state a claim because, Nintendo asserts, it has already established such a process; and (v) the Plaintiffs, who have already been injured, lack standing to pursue a claim for prospective injunctive relief.

The Plaintiffs move **(# 60)** for certification of this case as a class action. They request a class consisting of "all owners of a Wii remote wrist strap marketed by Nintendo." The Plaintiffs contend that approximately 39 million straps are "in use in the U.S." (although the state that Nintendo has received only 800 reports of damage to televisions from straps breaking).

## ANALYSIS

Because the scope of any purported class would depend on what claims, if any, survive the Motion to Dismiss, the Court turns to that motion first.

**A. Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Id.*

The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272,

1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

**B. Choice of laws**

The Plaintiffs premise federal subject matter jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. In determining what law applies to claims between diverse parties, the Court follows the choice of law rules of the forum state – here, Colorado. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

For injuries sustained in tort,[1] Colorado's choice-of-law rules provide that the substantive law of the state with "the most significant relationship" to the parties and the occurrence governs. *Boone v. MVM, Inc.,* 572 F.3d 809, 811-12 (10th Cir. 2009), *citing AE, Inc. v. Goodyear Tire & Rubber Co.,* 168 P.3d 507, 509-10 (Colo. 2007). Colorado adopts that rule from the Restatement (Second), Conflict of Laws § 6, §145, which requires the Court to consider factors such as the place where the injury occurred, the place where the conduct causing injury occurred, and residence of the parties, the place where the relationship between the parties is centered, and a number of public policy considerations.[2] *Id.* When, as here, the case involves claims of personal injury, the location of the injury presumptively provides the controlling law

---

[1]Products liability issues are considered under Colorado law to be tortious in nature. *Richard O'Brien Co. v. Challenge-Cook Bros., Inc.*, 672 F.Supp. 466, 468 (D. Colo. 1987).

[2]For example, the Court should consider the relevant policies of the various jurisdictions at issue and their interests in the outcome of the case, the need for predictable and uniform results, and the policies underlying the particular field of law, among others. *Id.*

5

unless some other state has a more significant relationship. *Boone*, 572 F.3d at 812 n. 1, *citing* Restatement, § 146.

Turning first to the locus of injury, for Ms. Elvig, it was apparently Colorado (and California and Florida for the other Plaintiffs). The locus of injury is an important factor, effectively creating a presumption that that jurisdiction provides the appropriate law. *Boone*, 572 F.3d at 812 n. 1; *see also* Restatement, § 145, comment e ("In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law . . . This is so for the reason among others that persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury"); *see also LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) ("Where the site of an accident is not fortuitous, the place of injury assumes much greater importance, and in some instances may be determinative"). However, the locus of injury takes on less significance when it is simply fortuitous, having "little relation to the occurrence and the parties with respect to the particular issue." Restatement, § 145, comment e.

In *Lewis-DeBoer v. Mooney Aircraft Co.*, 728 F.Supp.2d 642, 646 (D. Colo. 1990), the court found the locus of injury to be fortuitous where the plaintiffs were injured in Colorado by in aircraft accident resulting from a defective part manufactured and sold in Texas. The Plaintiffs point to *Lewis* as supporting the contention that the locus of their injuries here is fortuitous, but *Lewis* reflects the result of the peculiar doctrine that deems the locus of injuries in accidents involving air travel to usually be fortuitous, given the ease with which airplanes travel from jurisdiction to jurisdiction. *Id.*; *see also Foster v. U.S.*, 768 F.2d 1278, 1282 (11th Cir.

6

1985).  The doctrine of fortuitous injury is most commonly applied in product liability cases involving vehicles (or components thereof) that can be expected to travel freely – and to fail, causing injury – in jurisdictions that otherwise have no particular connection to the parties other than mere happenstance.  *Jones ex rel. Jones v. Winnebago Industries, Inc.*, 460 F.Supp.2d 953, 966-68 (N.D.Ia. 2006) (locus of injury in Idaho was fortuitous where injury involved defective camping trailer manufactured in Iowa and used by Colorado residents while vacationing, "place of injury becomes more significant to the conflict-of-laws analysis when it is something more than the place of injury, i.e., when there is some other basis for that state to have an interest in the litigation"); *compare Barron v. Ford Motor Co.*, 694 F.Supp. 1337, 1339-40 (C.D. Ill. 1988) (locus of injury not fortuitous where defective vehicle caused injury in state where owner resided and primarily used it).  Where a product causes injury to a victim while that victim is traveling in a jurisdiction away from his state of residence, the locus of injury in that particular state might be said to be fortuitous; by contrast, an injury that occurs in the state where the victim resides and where he purchased and used the product is not fortuitous.  *See Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1360 (8th Cir. 1994).

Here, the locus of Ms. Elvig's injury in Colorado is not the result of fortuity; rather, it is the unsurprising result of Ms. Elvig being a Colorado resident, apparently having purchased and used her Wii in Colorado.  Thus, besides being the locus of injury, Colorado has a connection to this dispute by virtue of Ms. Elvig's residence and her apparent purchase and use of the Wii in Colorado.  The Plaintiffs argue that the injuries in this case were fortuitous because the Wii system is "small and portable so that a consumer might take [it] anywhere . . . such as trips across state lines for vacations, video game competitions or conventions."  This argument might

7

be availing if, for example, the Plaintiffs indeed suffered injuries when using the Wii while traveling and Nintendo sought to invoke a manufacturer-friendly product liability law in the state of injury. *See e.g. Rosenthal v. Ford Motor Co.*, 462 F.Supp.2d 296, 301-06 (D. Conn. 2006) (locus of injury in vehicle accident in North Carolina was fortuitous where defective product was purchased in Connecticut, owner later relocated to North Carolina, injury affected New York and North Carolina residents, and public policy concerns favored application of less-restrictive Connecticut law). In such circumstances, the Court might invoke the doctrine of fortuitous injury and declare a different state's law to apply. But there is no indication that Ms. Elvig suffered her injury while traveling, nor that she suffered the injury in anything other than in the regular use of the Wii in her state of residence. One cannot say that Colorado's only connection to the suit is limited to being the fortuitous place of injury where Ms. Elvig suffered that injury in the state where she resides and where, one assumes, the Wii was purchased and normally used. Indeed, taken to its logical extreme, the Plaintiffs' argument would abrogate the entire locus of injury factor in the choice-of-law inquiry in all product liability claims where the product was portable. The Court is not prepared to read such a nearly categorical exception for products liability claims into the choice-of-law analysis without substantial authority suggesting that it do so, and the Plaintiffs cite to no such authority. *Dorman*, 23 F.3d at 1359 (accepting argument that place of manufacture was of paramount importance in choice-of-law inquiry "would render the [presumption of significance attaching to locus of injury] meaningless in virtually every products liability case"). Accordingly, the Court concludes that the locus of injury in this case is Colorado, California, and Florida, but not Washington, and this factor is not diminished by any fortuitousness.

Next, the Court examines the locus of the misconduct alleged. Although the Amended Complaint alleges that the controller (and presumably the strap) was "negligently manufactured, constructed, designed, prepared, assembled, tested, packaged, and/or labeled," the Amended Complaint does not allege where each of these steps were performed. They allege that Washington state is the location of Nintendo's corporate headquarters, but do not assert that the controller or wrist strap were designed in Washington, manufactured in Washington, tested in Washington, etc. The Plaintiffs essentially ask the Court to indulge in a presumption that the location of a company's corporate headquarters is sufficient to subject all manufacturing, design, etc. defects in products sold by that company to law of the state where the headquarters are located, regardless of whether the acts in question take place in other states or, indeed, in other countries. *See e.g. Dorman*, 23 F.3d at 1360 n. 4 (affording little significance to locus of design and testing of defective product in Missouri, where product was manufactured in Taiwan and delivered and sold to victim in Canada without ever entering United States). This Court will assume, for purposes of this motion, that the controller and strap were indeed designed, manufactured, tested, etc. in Washington. The Court ascribes weight to this factor as discussed below.

The residence of the parties is not a particularly significant factor. As between Nintendo and the Plaintiffs, each party asserts that the choice-of-law issue should be resolved in favor of applying the law of the other's residence. No particular weight is afforded to this factor.

The "center of the parties' relationship" is somewhat difficult to assess. Ordinary purchasers of a Wii have no particular relationship with Nintendo, except through the intercession of a retailer who mediates the delivery of the Wii to the purchaser and the revenue

9

to Nintendo. It is difficult in such circumstances to ascribe much significance to this factor.

The Plaintiffs contend that some of them have an additional relationship with Nintendo, as they contacted Nintendo in an attempt to obtain compensation for their injuries. Again, however, ascribing a locus to this relationship is difficult – the communications were made between the Plaintiffs' state(s) of residence and Nintendo in Washington, without any indication that either party entered into the other's state or otherwise engaged in any action that would elevate one state's interest in this matter over another's. Thus, this factor, too, is effectively neutral in its application.

Which brings to the Court to the multi-faceted examination of public policy. Of particular interest here is the purpose of the laws governing the cause of action in each state (*i.e.* is the law intended to have primarily compensatory or deterrent effects, etc.). For example, in *Lewis*, the court noted the purposes of Colorado's damage cap to prevent windfalls and to protect Colorado defendants from large verdicts, and concluded that the Texas defendant had no interest in the latter and that invoking the former would interfere with Texas' apparent interest in deterring misconduct by allowing unlimited damages. 728 F.Supp. at 645-46. Here, the Court begins by examining the purposes of the Washington statutes being invoked.

The purpose of the Washington Consumer Protection Act is to "protect <u>this state's citizens</u> from unfair and deceptive business practices." *See Dix v. ICT Group, Inc.*, 106 P.3d 841, 844-45 (Wa. App. 2005) (emphasis added); *see also* RCW § 19.86.010(2) (defining terms to regulate "any commerce directly or indirectly affecting <u>the people of the state of Washington</u>") (emphasis added). Thus, the clear purpose of the Consumer Protection Act is to protect Washington citizens against deceptive practices, not, as the Plaintiffs invoke it here, to protect

10

non-Washington citizens against deception by Washington's merchants.

To the extent the Plaintiffs require protection against deceptive trade practices that are committed against them in their states of residence, the Court should be wary of substituting Washington's protective scheme for the consumer protections of the Plaintiffs' own states. Colorado, California, and Florida may protect their residents more or less comprehensively. The Plaintiffs' suggestion that Nintendo's sales practices anywhere in the country should be governed by Washington law would subvert the ability of other states to protect its citizens and to regulate those who offer products or services to its citizens. More importantly, application of Washington law, although convenient for the purposes of pursuing a class action, would defeat reasonable expectations of Wii purchasers under the laws of the states where they reside.

On the other hand, Washington's statutory provisions defining the scope of product liability, RCW § 7.72 *et seq.*, states that it was intended to serve two purposes: "protecting Washington industries from excessive litigation" and "preserving the right of consumers to seek redress for injuries caused by unsafe products." *Zenaida-Garcia v. Recovery Systems Technology, Inc.*, 115 P.3d 1017, 1021-22 (Wa. App. 2005). *Zenaida* recognizes that, with regard to statute of limitations questions, the Washington statute evinces a consumer-friendly public policy, granting a more generous limitations period than other jurisdictions. *Id.* However, because only the statute of limitations was at issue in *Zenaida*, that case does not discuss the aspects of the Washington statute that serve to protect Washington industries, such as Nintendo. In *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199 (Wa. 1989), the Washington Supreme Court explained that one of the purposes of the statute was to displace common law causes of action with a single, simplified claim, *id.* at 1204 (discussing legislative

intent to abolish "the variety of causes of action . . . available to the plaintiff seeking recovery for injuries allegedly resulting from a defective product" and replace it with "a single cause of action, termed a 'product liability claim'," "the definition [of 'product liability claim'] modified previous existing applicable law by displacing common law causes of action"), and to limit previously-available common-law remedies in favor of statutorily-defined ones. *Id.* at 1204-05 (discussing "the statute's intended preemptive effect on common law remedies"). In these respects, then, it appears that the Washington statute advanced the public purpose of protecting Washington manufacturers against certain types of disfavored product liability claims and damages.

Ultimately, however, the claims at issue in this case do not appear to implicate either the especially consumer-friendly or manufacturer-friendly aspects of the Washington statute. The consumer-friendly statute of limitations does not appear to be a factor in this case – all of the currently-named Plaintiffs commenced suit within approximately two years of their injuries. Nor does the manufacturer-friendly limitation on economic damages for product liability appear to be at issue – for example, the Plaintiffs do not appear, at least at this point, to allege that the failure of their Wii controllers or straps (or the damage to their television sets) caused them to suffer consequential economic damages in the form of lost business. Thus, on the whole, the public policy concerns that underlie Washington's product liability statute appear to be neutral in this analysis, as this case does not appear to implicate the peculiar public policy concerns that motivated the enactment of that law.[3]

---

[3]The Court notes that Nintendo does not specifically identify the jurisdiction (or, more likely, jurisdictions, in that the Court assumes from Nintendo's position that it would rather be governed by the consumer protection and products liability laws that apply in the particular state

The Court has considered other public policy factors as well, such as the value of a predictable and uniform means of resolving disparate claims and concerns of comity and deference to the prerogative of individual states' choices concerning consumer protection and product liability laws. When aggregated together, these factors yield an overall neutral effect. It may be said that consumers (and perhaps even Nintendo) would benefit from the assurance that all claims involving Wii controllers will be adjudged under a single, predictable body of law. It may also be said that doing so would strip all other states of the ability to grant more or less protection to consumers than Washington has chosen to do in these circumstances. Moreover, adoption of a single controlling law could introduce unpredictable results if, for example, Nintendo's competitors – say, domiciled in Maine – introduce a similar, and similarly defective, controller. Depending on the relative laws of Washington and Maine, consumers in, say, Iowa might find that, inexplicably, damages caused by Nintendo's defective controller are recoverable under Washington law but similar damages caused by the competitor's product are not recoverable under Maine laws, or vice-versa. Allowing such claims to be adjudicated under each victim's state's own consumer protection and product liability laws may shift the risk of suffering uncertain and unpredictable results to manufacturers, allowing consumers to readily predict when damages can and cannot be recovered. Regardless of how the Court rules, one side will enjoy predictability and one side will suffer confusion; without some reason to favor one side over the other in this situation, the Court finds these general public policy factors to be of

---

where a Wii user suffered an injury) that it contends supplies the governing law under choice-of-law rules. This makes it impossible for the Court to meaningfully compare the public policy concerns of Washington with the public policy concerns of Nintendo's chosen jurisdiction. As a result, the Court assumes that Nintendo's chosen jurisdiction has no particular public policy interests, positive or negative, to be weighed in the choice-of-law analysis.

neutral weight.

Having assessed the appropriate factors, the Court is thus called upon to weigh them. Because the Court rejects the argument that the locus of injury is fortuitous, the Restatement requires that the Court give strong weight to that location as being the state with the most significant relationship here. With regard to the Washington Consumer Protection Act, the Court also finds that the public policy factors tip against the application of Washington law, as the protections intended to be served by that statute run only to consumers in Washington, not to the Plaintiffs here. Most of the remaining factors, as discussed above, are neutral and therefore add nothing to tip the balance one way or the other. Thus, the only factor weighing significantly in favor of the application of Washington law is the fact that the controller and strap were designed and manufactured in Washington. The Court finds that this factor is insufficient to tip the balance in the Plaintiffs' favor.

It is reasonable to assume that most consumers expect to be protected by the laws applicable in the state where they live, purchase a product and use it. It is less likely that consumers make purchases after carefully assessing where the manufacturer is located, where the item was produced and consequently what recourse they would have under the laws of such locations if the product turns out to be defective.

On balance, consumer expectations are preserved by a rule that gives primary importance to the locus of injury, at least where that locus is the both the state of purchase and the consumer's residence. Moreover, selecting the locus of injury as the source of the controlling law places little additional burden on sellers, who are already expected to comply with a myriad of competing state laws and regulations in order to do nationwide business. Should a seller find

14

a particular state's consumer protection or product liability laws too consumer-friendly, that seller can simply choose not to do business in that state, just as the seller might do if any other regulatory burden by that state became too onerous. Thus, striking the choice-of-law balance in favor of the locus of injury, at least when that state is both the state of purchase and the consumer's residence,[4] yields a result that is most consistent with the principles articulated in the Restatement and with the reasonable expectations of consumers and producers. Accordingly, the Court finds that Colorado choice-of-law rules dictate that Washington law does not apply to the claims of the three named Plaintiffs here, and to the extent the claims herein are premised on Washington law,[5] those claims are dismissed.

### C. Aftermath

This result, however, does not end the inquiry. Dismissal of claims premised on Washington law does not necessarily leave the Plaintiffs without any remedy. Each Plaintiff may seek redress under the laws of the state where their purchase and injury are the same. Such claims might be best asserted in separate actions in differing venues. If pursued in this action, the necessary application of varying state laws might affect the Plaintiffs' ability to act as a class.

This Court is unwilling to speculate as to how the Plaintiffs choose to respond to the

---

[4] The Court expresses no opinion as to what choice-of-law rules might apply where the injury occurred in the state of the consumer's residence, but the product was purchased in a different state (e.g. the relocating buyer), or where the purchase and injury occur in the same state, but the victim resides in another state (e.g. the visiting victim). As best the Court can determine from the Amended Complaint, this situation is not presented by any of the three named Plaintiffs here.

[5] The Amended Complaint's statutory claims are indisputably premised on Washington law. The negligence claim, however, does not betray the jurisdiction it invokes.

conclusion reached in this Opinion. Rather, the Court will grant the Plaintiffs an opportunity to regroup and reassess. The Court grants Nintendo's motion to dismiss on choice-of-law grounds. In addition, because the dismissal eliminates the claims upon which the motion for class certification is premised, that motion is denied as moot.

However, the effect of this ruling will be stayed for a period of 30 days from the date of this Order, during which the Plaintiffs may consider whether amendment of the pleadings or redesign of this case suits their purposes. The Plaintiffs are granted leave to file a Second Amended Complaint (and, if appropriate, supporting motions) within that 30 day period, barring which, the case will be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Nintendo's Motion to Dismiss **(# 41)** is **GRANTED**, and the claims in the Amended Complaint are **DISMISSED**. The Plaintiffs' Motion to Certify a Class **(#60)** is **DENIED,** as moot. The effect of this ruling is stayed for 30 days, during which the Plaintiffs are granted leave to file a Second Amended Complaint and, if appropriate, supporting motions. If the Plaintiffs elect to file no amended pleading within that time, the dismissal of all claims shall become effective without further Order of the Court and the Clerk of the Court shall close this case.

Dated this 8th day of March, 2010

**BY THE COURT:**

_____

Marcia S. Krieger

United States District Judge