IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02616-MSK-MEH

MOLLY ELVIG, on behalf of herself and all others similarly situated,

    Plaintiffs,

v.

NINTENDO OF AMERICA, INC.,

    Defendant.

___

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to Defendant Nintendo of America, Inc.'s (Nintendo") Motion to Dismiss or for Summary Judgment **(# 111)**, Ms. Elvig's response **(#113)**, and Nintendo's reply **(# 122)**.[1]

## FACTS

The Court derives the following facts from the Amended Complaint **(# 102)**. In consideration of the motion, the Court considers only undisputed facts and construes those that are disputed most favorably to the non-movant. (To the extent the Court considers additional facts in evaluating the summary judgment portion of Nintendo's motion, the Court will identify those facts as part of the analysis.)

---

[1] Also pending is a Motion for Summary Judgment **(# 91)**, filed by Nintendo prior to the Court's dismissal **(# 92)** of the prior claims premised on Washington state law, and Ms. Elvig's subsequent Amended Complaint **(# 102)** asserting the current claims under Colorado law. The Court assumes that the prior motion for summary judgment was rendered moot by the dismissal and repleading.

1

This action concerns Nintendo's "Wii" video game console. The Wii employs a motion-sensing controller that allows the player to manipulate the on-screen action by performing imitative physical actions, such as swinging the controller like a tennis racquet to control the on-screen action in a tennis game. To ensure that controllers do not leave a player's hand during vigorous physical activity, Nintendo includes a "safety strap" to be worn around the player's wrist. The strap, in turn, connects to the controller by means of a "string sling."

Nintendo released the Wii on November 19, 2006. Within a few days, Nintendo began receiving reports that, during normal game play, the controller would slip out of the player's hand and the safety strap would fail, resulting in "flying Wii controllers". These controllers damaged televisions and other property, and caused personal injuries.

As a result of these incidents, on December 15, 2006, the Consumer Product Safety Commission ("CPSC") "authorized a product recall" of the original safety strap design. Nintendo then began shipping an improved safety strap employing a thicker string sling (the "safety strap B"). However, players encountered the same failures with safety strap B, and in August 2007, Nintendo released another version of the strap ("safety strap C") which included a "locking mechanism" for the player's wrist. Players continued to experience strap failure with the safety strap C, but Nintendo continues to distribute that product. All told, the Amended Complaint alleges that Nintendo has received reports of 900 instances of safety straps failing and causing personal injuries or property damage.

Ms. Elvig purchased a Wii system on or about December 3, 2006. On that same day, Ms. Elvig's minor son was playing a bowling game when he lost hold of the controller. The safety strap broke, and the controller struck Ms. Elvig's television set, breaking its screen. Ms. Elvig

2

contacted Nintendo by e-mail on December 18, 2006. On February 6, 2007, Nintendo representatives contacted Ms. Elvig, apparently informing her of a "claims process" that Nintendo had for such situations. However, Ms. Elvig alleges that, to date, Nintendo has not compensated her for the damage to her television.

Ms. Elvig asserts four causes of action, although only three state substantive claims:

(i) violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, in that Nintendo engaged in deceptive trade practices by (a) distributing safety straps that Nintendo knew or should have known were inadequate for their intended purpose; (b) administering an "arbitrary" claims process for injuries and damage resulting from strap failures; (c) performing deceptive tests on straps "in connection with litigation"; (d) disseminating advertising that "represented untrue safety characteristics," such as that the Wii "could and should be played in an active manner"; (e) submitting erroneous reports to the CPSC; (f) "knowingly and purposefully . . . distribut[ing] to consumers a product that it knows to be incapable of carrying out its safety function; and (g) representing that the Wii should be used in a vigorous manner when it cannot be done in a safe manner;

(ii) violation of the Uniform Commercial Code, C.R.S. § 4-2-315, in that Nintendo breached an implied warranty that the safety straps were fit for a particular purpose;

(iii) violation of the Colorado Product Liability Act, C.R.S. § 13-21-401 *et seq.*, in that it distributed a safety strap that was unreasonably dangerous and defective; and

(iv) a "claim" for injunctive relief under the CCPA, which this Court construes as a prayer for relief should Ms. Elvig prevail on her substantive CCPA claim.

Nintendo moves **(# 111)** to dismiss Ms. Elvig's CCPA and Uniform Commercial Code claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, seeks summary judgment on those claims. The Court will address the particular grounds of Nintendo's motion as part of its analysis.

## **ANALYSIS**

Although Nintendo's motion purports to seek dismissal on Rule 12(b)(1) and 12(b)(6) grounds as well as seeking summary judgment, the Court finds it unnecessary to extensively address the Rule 12 grounds Nintendo asserts.[2] Instead, the Court construes the motion solely as one seeking summary judgment.[3]

---

[2] The Rule 12(b)(1) motion seeks to dismiss Ms. Elvig's "claims" to the extent they allege liability based on the re-designed safety straps B and C, on the grounds that Ms. Elvig was only injured by – and thus, only has standing relating to – any defective design of the original safety strap. The motion implicitly concedes that Ms. Elvig has standing to bring all of the instant claims as they may relate to the original design of the safety strap, and thus, "dismissal" of any claim for lack of standing is unwarranted. It is axiomatic that Ms. Elvig cannot challenge actions that caused her no injury, and, rather than slicing Ms. Elvig's claims into smaller parts simply to "dismiss" aspects of them, the Court will simply construe her claims mindful of the scope of her claimed injuries.
   As to the Rule 12(b)(6) motion, because Nintendo has extensively relied on extrinsic evidence, and has not purported separate its arguments directed at pleading deficiencies from its arguments directed at evidentiary deficiencies, the Court will disregard any Rule 12(b)(6) arguments.

[3] As discussed herein, Ms. Elvig's response to Nintendo's motion does not attach any supporting evidence. It does not appear to this Court that this is the result of oversight or a misunderstanding as to the nature of the relief requested by Nintendo's motion. Ms. Elvig's response to the motion contains several indicia showing her understanding that Nintendo was seeking summary judgment: (i) the caption of her response notes that Nintentdo's motion seeks summary judgment; (ii) the initial paragraph of the response does so as well; (iii) the concluding paragraph also mentions that the motion seeks summary judgment; and (iv) Ms. Elvig does cite

4

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual

---

to evidence outside the pleadings on two occasions, and such evidence would not properly be before the Court on a pure Rule 12 motion. Accordingly, the Court finds that Ms. Elvig understood that Nintendo's motion sought summary judgment and that she understood her obligation to thus come forward with evidence supporting her claims.

dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. CCPA claim

Nintendo seeks summary judgment on Ms. Elvig's CCPA claim. To establish a claim under the CCPA, a plaintiff must show: (i) that the defendant engaged in one of several categories of unfair or deceptive trade practices; (ii) the practice occurred in the course of the defendants business or trade; (iii) the practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (iv) the plaintiff suffered an injury; and (v) the challenged practice caused the injury. *Park Rise Homeowners Assn. v. Resource Constr. Co.*, 155 P.3d 427, 433 (Colo. App. 2006). In general, Nintendo alleges that Ms. Elvig cannot establish the first and last elements – *i.e.* a deceptive practice and causation of injury.

Before turning to Ms. Elvig's particular response to the Nintendo's argument on the CCPA claim, the Court pauses to address Ms. Elvig's response in general. Although she offers a substantial factual recitation in her response brief, she cites to supporting evidence with regard to

only two[4] of the facts she asserts. A party faced with a summary judgment motion may not rest on allegations in their pleadings[5] or naked assertions in a brief; they must instead specifically direct the Court to supporting evidentiary material, such as affidavits, deposition transcripts, or specific exhibits. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). With the one exception noted by the Court, Ms. Elvig has failed to submit, much less direct the Court to any evidentiary material establishing the facts she asserts. As a result, the Court disregards Ms. Elvig's factual assertions and relies entirely on the facts asserted in Nintendo's motion and supported by citations to supporting evidence.

With regard to the CCPA claim, the Court notes that although the Amended Complaint purports to identify a variety of alleged deceptive trade practices, Ms. Elvig's response brief focuses solely on Nintendo engaging in "false advertising" that "touts the Wii's athletic usages while making no mention of the straps' propensity to break." However, there is no evidence properly in the record that sets forth the contents of such advertising, such that the Court can assess the accuracy of Ms. Elvig's characterization of its contents. Ms. Elvig has not attached the advertisements themselves, nor offered any firsthand description of the contents of the

---

[4]In one instance, she follows a factual assertion with a citation stating "See DVD excerpts from deposition running four-plus minutes, # 98." The Court assumes that the "# 98" refers to a docket number in this case, and indeed, Docket # 98 is a DVD filed in conjunction with a motion to extend the discovery cutoff. In the other instance, she quotes the contents of a letter from the CPSC to Nintendo, and points out that the letter can be found as an exhibit to Docket # 60, a previous motion to certify a class. These two citations are sufficient to direct the Court's attention to the evidence supporting those particular factual assertions.

[5]The Court notes that the Amended Complaint is not verified, and thus, cannot be treated as an affidavit.

7

advertisements. Nintendo cites to portions of Ms. Elvig's deposition in which she acknowledges that she does not remember the contents of any advertisements. The Amended Complaint makes a passing reference that Ms. Elvig's son viewed some of Nintendo's advertisements, but Ms. Elvig has not supplied an affidavit or deposition of her son that would disclose the contents of Nintendo's advertising. Without such evidence, Ms. Elvig has not carried her burden of demonstrating that Nintendo's advertising was false in any way. Absent proof that Nintendo's advertising was deceptive, Ms. Elvig has failed to demonstrate a genuine dispute of fact as to whether Nintendo engaged in any deceptive trade practice for purposes of the CCPA claim. Accordingly, Nintendo is entitled to summary judgment on this claim.

### C. Uniform Commercial Code claim

The Amended Complaint titles the second cause of action as "Uniform Commercial Code - Sales" and specifically cites to C.R.S. § 4-2-315, which concerns implied warranties that goods are fit for a particular purpose. Nevertheless, the parties appear to agree that this claim actually consists of two separate claims: a violation of the implied warranty of fitness for a particular purpose and a violation of the implied warranty of merchantability. *See* C.R.S. § 4-2-314.

Turning first to the implied warranty of fitness for a particular purpose, C.R.S. § 4-2-315 states that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." To establish a claim for violation of this implied warranty, a plaintiff must show that: (i) the defendant impliedly warranted the product to be fit for a particular purpose; (ii) the plaintiff was reasonably expected to use the product; (iii) the product was not

8

suitable for the purpose warranted; and (iv) the breach of the warranty caused the plaintiff's injuries. *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. App. 1993). A "particular purpose" differs from the ordinary purpose for which the goods are to be used; in other words, a buyer obtaining goods for a "particular purpose" is one who, for reasons peculiar to the buyer, is obtaining the goods for use other than that which is customarily made of the goods. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 208 (Colo. 1984).

Here, there is no evidence that Ms. Elvig obtained the Wii for a "particular purpose" other than that for which it would customarily be used. Once again, Ms. Elvig has not come forward with any evidence supporting her allegations, and thus, she cannot establish that she obtained the Wii for any "particular purpose," as that term is described. Indeed, even though allegations in pleadings are not sufficient evidence to oppose a motion for summary judgment, the Court notes that Ms. Elvig admits in the Amended Complaint that, at the time of the accident, her son "was playing the Wii bowling game in the manner and fashion represented by Nintendo in its marketing and promotion materials." In short, Ms. Elvig was admittedly using the Wii for its "ordinary purpose" at the time of the accident, not for some "particular" – *e.g.* unusual – purpose.[6] The absence of any evidence that Ms. Elvig obtained the Wii for some "particular purpose" other than to play games – the "ordinary purpose" for which the Wii was sold – requires that Nintendo be granted summary judgment on her claim for violation of the implied warrant of fitness for a particular purpose.

---

[6]Ms. Elvig's response regarding this claim reveals that she misunderstands the legal significance of the term "particular purpose." It is clear that she intends to assert that she used the product for precisely its ordinary, intended purpose. For example, she argues that "A safety strap has a particular purpose: safety."

The parties agree that Ms. Elvig also asserts a claim for violation of the implied warranty of merchantability. C.R.S. § 4-2-314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." In this context, "merchantability" means that the goods "are fit for the ordinary purposes for which such goods are used." C.R.S. § 4-2-314(2)(c); *Palmer*, 684 P.2d at 208. Thus, to prevail on a claim for breach of the implied warranty of merchantability, Ms. Elvig must come forward with evidence that the safety strap was not fit for the ordinary purpose for which it was used.

Once again, Ms. Elvig's failure to come forward with evidence to support her factual assertions is fatal to this claim. Ms. Elvig had adduced no evidence that would show what the ordinary purpose of the safety strap[7] is, nor evidence that would demonstrate that the strap as designed and manufactured was not fit for that purpose. As to the purpose of the strap, neither Ms. Elvig nor Nintendo has identified evidence that would indicate what the intended purpose of the strap was. One might plausibly assume, as Ms. Elvig does, that the strap was intended to prevent a controller, inadvertently released by the player during vigorous activity, from hurling towards the player's television (or towards another player) and causing damage. At the same time, one might also plausibly assume that the strap was simply intended to keep an inadvertently released controller in the vicinity of the player so that it could be easily retrieved

---

[7]The Court notes that "safety strap" is an appellation that Ms. Elvig has given the item in the Amended Complaint, and, in deference to her status as non-movant here, the Court has adopted that designation. Nintendo refers to the item as a "wrist strap," both in its briefing and in its actual packaging and manuals accompanying the Wii system.

and the game not disrupted[8] – in other words, that the strap was never intended to withstand the forces of high-speed controller release.[9] (Ms. Elvig's brief notes in a footnote that the "choke hitch" by which the string sling connects the strap to the controller "are meant to keep the object from falling or becoming lost," and "are not meant to secure the [item] to the owner when the owner tries to throw it like a fastball." This argument might bolster the notion that the strap was never intended to protect against accidents such as that suffered by Ms. Elvig.) Without some evidence supporting Ms. Elvig's conception of the purpose of the strap, the factfinder could not conclude that the strap's purpose was indeed to protect persons such as Ms. Elvig from injury or property damage. For this reason alone, Ms. Elvig's claim premised upon the implied warranty of merchantability fails. Accordingly, Nintendo is entitled to summary judgment on Ms. Elvig's claims under the Uniform Commercial Code.

**D. Strict Products Liability**

Ms. Elvig's final claim sounds in strict products liability. In products liability actions, Colorado follows common-law rules.[10] *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1173 (Colo.

---

[8]Another plausible purpose for the strap would be to arrest the flight of a wayward controller enough to ensure that the controller would survive impact with a solid object. In other words, the strap could arguably have been designed to protect the controller against breakage, but not to ensure that items struck by the controller would escape damage.

[9]Evidence adduced by Nintendo is somewhat consistent with this conception of the strap's purpose. Safety cards included with the Wii instructed users that "even while wearing the wrist strap, make sure you don't let go of the Wii Remote during game play . . . If you use excessive motion and let go of the Wii Remote, the wrist strap may break and you could lose control of the Wii Remote. This could injure people nearby or cause damage to other objects." (Emphasis added.) This evidence indicates that Nintendo did not intend the strap to withstand the player's release of the controller during "excessive motion," suggesting that the intended purpose of the strap was not to restrain the controller in such circumstances.

[10]Colorado maintains a Products Liability Act, C.R.S. § 13-21-401 *et seq.*, but that act merely provides for various defenses and presumptions that are applicable in "any action brought

11

1993), *citing* Restatement (Second), Torts § 402A.  The Restatement explains that "one who sells any product in a defective condition unreasonably dangerous to the user" is subject to liability.  A "defective condition" is one that is "not contemplated by the ultimate consumer" and which "will be unreasonably dangerous to him."  Restatement, § 402A, comment g.  A product is not "defective" where it is delivered in a condition that would prove safe when "handled in a normal manner," but "subsequent mishandling" is the cause of the user's injury.  *Id.*  A seller may, "in order to prevent the product from being unreasonably dangerous, . . . be required to give directions or warning . . . as to its use."  *Id*., comment j.  Where the seller gives such a warning, "the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."  *Id.*   Thus, a plaintiff asserting a claim for products liability under Colorado law must prove: (i) the product has a defective condition rendering it unreasonably dangerous to the consumer; (ii) the product was expected to and did reach the consumer without substantial change in that condition; (iii) the defect caused the plaintiff's injury; (iv) the defendant sold the product and is in the business of doing so; and (v) the plaintiff sustained damages.  *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536-37 (Colo. 1997).  Nintendo primarily challenges Ms. Elvig's ability to demonstrate that the Wii system was defective and unreasonably dangerous.

Nintnedo contends that it gave players adequate warnings of the need to retain possession of the controller and advised them of the possibility that release of the controller during vigorous

---

against a manufacturer or seller of a product."  C.R.S. § 13-21-401(2).  It does not purport to create any substantive right of action.

motion could result in breakage of the strap and damage to persons or property. As previously mentioned, Nintendo has come forward with evidence that it did advise players, via a safety card included with the Wii system, that "If you use excessive motion and let go of the Wii Remote, the wrist strap may break and you could lose control of the Wii Remote. This could injure people nearby or cause damage to other objects." This, coupled with repeated instructions on the safety card that advise players "DO NOT LET GO OF THE REMOTE DURING GAME PLAY," ensure that, <u>if the player follows Nintendo's instructions and heeds its warnings</u>, the Wii system does not pose an unreasonable danger. Ms. Elvig does not dispute that such instructions were included with the Wii she received.[11] Nintendo thus having given an adequate warning to users, it may "reasonably assume that it will be read and heeded," and thus, has ensured that the product was not "unreasonably dangerous." Restatement, § 402A, comment j.

In response to Nintendo's motion, Ms. Elvig contends that "a warning must adequately warn of a specific danger" and that "The current warnings make no mention of the fact [that] the strap [is] incapable of adequately carrying out its intended function." She goes on to state that "Nintendo does not warn of the true danger – that the strap breaks, the controller then flies through the air like a missile, [and] damage results." This argument is controverted by the undisputed facts in the record. Nintendo <u>expressly</u> warns players that, if they accidentally release the controller during vigorous motion, "<u>the wrist strap may break</u>" and that "could injure people nearby or cause damage to other objects." (Emphasis added.) Ms. Elvig simply ignores a warning that gave her precise notice of the possibility that a specific kind of misuse of the

---

[11]Ms. Elvig testified that neither she nor her son read the safety card or instruction manual.

13

product – "us[ing] excessive motion and let[ting] go of the Wii Remote" – could cause the product to fail in a particular way – "the wrist strap may break" – resulting in a particular type of injury – "caus[ing] damage to other objects."  Because Nintendo gave explicit, precise warnings seeking to alert users that misuse of the product could result in the very danger that caused Ms. Elvig's injury, it cannot be liable for Ms. Elvig's failure to heed that warning.  Nintendo is thus entitled to summary judgment on the strict products liability claim.

## CONCLUSION

For the foregoing reasons, Nintendo's Motion for Summary Judgment (**# 111**) is **GRANTED**.  The Clerk of the Court shall enter judgment in favor of Nintendo on all of Ms. Elvig's claims.  Nintendo's prior summary judgment motion (**# 91**) is **DENIED AS MOOT**.

Dated this 23d day of September, 2010

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge